**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
111 W. Ocean Blvd Suite 426
Long Beach, California 90802
(562) 534-5907
victor@almeidalawgroup.com

David S. Almeida (*pro hac vice*
forthcoming)
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 437-6476
david@almeidalawgroup.com

*Counsel for Plaintiffs & the Proposed Classes*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN REYES, ANTHONY MALKO, AND ELI SILVA *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>ALIEXPRESS INTERNATIONAL (UNITED STATES) CORPORATION,<br><br>Defendant. | Case No. 5:26-cv-00905<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF THE ELECTRONIC COMMUNICATION PRIVACY ACT, 18 U.S.C. § 2510, *et seq.*<br>2. VIOLATIONS OF CALIFORNIA INVASION OF PRIVACY ACT, CAL. PENAL CODE § 631<br>3. VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT, CAL. PENAL CODE § 632<br>4. UNJUST ENRICHMENT<br>5. INVASION OF PRIVACY<br>6. INTRUSION UPON SECLUSION<br>7. COMPREHENSIVE COMPUTER DATA AND ACCESS AND FRAUD ACT, CAL. PENAL CODE § 502, *et seq.*<br>8. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *et seq.*<br>9. VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT |

-1-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

("CLRA"), CAL. CIV. CODE §1770, *et seq*

**DEMAND FOR JURY TRIAL**

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs John Reyes ("Reyes"), Anthony Malko ("Malko") and Eli Silva ("Silva;" together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action lawsuit against AliExpress International (United States) Corporation ("AliExpress" or "Defendant") and alleges, upon personal knowledge as to their own actions and their counsel's investigation and upon information and good faith belief as to all other matters, as follows:

**INTRODUCTION**

1.      In April 2025, the U.S. Department of Justice implemented the Data Security Program, a national security program designed to restrict the transfer of bulk sensitive personal data and U.S. government-related data to "countries of concern." This prohibition, known as the "Bulk Data Transfer Rule," and more formally known as the "Rule Preventing Access to U.S. Sensitive Personal Data and Government-Related Data by Countries of Concern or Covered Persons" is codified at 28 C.F.R. Part 202 (the "BSDR" or the "DOJ Rule").

2.      The impetus for the BSDR was that the U.S. government determined that the export of Americans' behavioral data to hostile foreign regimes or entities under their jurisdiction constitutes an "unusual and extraordinary threat . . . to the national security and foreign policy of the United States that has been repeatedly recognized across political parties and by all three branches of government."[1]

3.      The BSDR was thus implemented to prevent adversarial countries from acquiring large quantities of behavioral data which could be used to surveil, analyze, or exploit American citizens' behavior.

---

[1] Justice Department Implements Critical National Security Program to Protect Americans' Sensitive Data from Foreign Adversaries, U.S. DOJ (Apr. 11, 2025), *available at* https://www.justice.gov/opa/pr/justice-department-implements-critical-national-security-programprotect-americans-sensitive (last visited January 29, 2026; internal quotation omitted).

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

4.    To prevent any potential for mass surveillance, the BSDR prohibits transferring Americans' bulk sensitive personal data to entities tied to "countries of concern."

5.    Currently, the "countries of concern" are China, Cuba, Iran, North Korea, Russia, and Venezuela.

6.    The Rule also limits access by "covered persons," meaning (i) individuals who either reside in "countries of concern" or are controlled by entities in those countries or (ii) entities that are organized or chartered under the laws of, or have their principal place of business in, a country of concern, or are owned 50% or more by such entities.

7.    Such bulk sensitive data includes the personal identifiers and associated communications at issue in this case.

8.    The BSDR makes clear that sending American consumers' information to Chinese entities through automated advertising systems and associated databases is prohibited, as evidenced by examples provided by DOJ in the BSDR.[2]

9.    AliExpress, and its Chinese parent, Alibaba Group Holding Limited ("Alibaba Group"), have repeatedly faced scrutiny from regulators and Congress over concerns that their data practices facilitate surveillance by the Chinese government. These regulators have warned that Alibaba Group functions as a conduit for state directed data collection targeting Americans.

10.    In direct violation of the BSDR, AliExpress—through its automated advertising infrastructure and associated databases—transmits Plaintiffs' and potentially millions of other American consumers' data to China.

11.    This putative class action lawsuit results from that unlawful data-sharing of American citizens' sensitive information with a foreign adversary of the United States in direct violation of the BSDR.

12.    As detailed herein, AliExpress knowingly and systematically used

_____
[2] *See, e.g.,* 28 C.F.R. §§ 202.214(b)(7); 202.228(c)(2).

-4-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

communications and associated covered personal identifiers intercepted from American citizens for the purpose of sharing U.S. consumers' data with covered persons without the safeguards required by U.S. law.

13.    When Plaintiffs visited https://www.AliExpress.com (the "Website") to browse for and purchase products, Defendant facilitated the interception and disclosure of the full-page context—including full-string URLs revealing the pages viewed and product viewed—and persistent identifiers—including IP addresses, advertising IDs, and cookie data—to third parties.

14.    AliExpress then used the intercepted communications and identifiers for its own purposes including transmitting the intercepted communications and identifiers to covered persons—which includes entities, like Alibaba Group, organized or chartered under the laws of, or having their principal place of business in, a country of concern, like China—in violation of the BSDR.

15.    This transmission enabled AliExpress, and its foreign parents, to link Plaintiffs' browsing activity to their identity, track their behavior, and build detailed profiles reflecting their interests, location, habits and other private attributes.

16.    In the hands of a foreign adversary, such data can be used to assemble detailed behavioral profiles, identify psychological or financial weaknesses, and monitor individuals in sensitive roles including, but not limited to, jurists, military personnel, journalists, politicians, or dissidents.

17.    The disclosure of such data to anyone is a profound invasion of privacy but when that data is disclosed to foreign adversaries, it is also a direct threat to national security as it greatly increases the potential for coercion, reputational harm, and/or blackmail.

18.    The conduct alleged herein gives rise to numerous individual and representative claims under federal and state law including, but not limited to, the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* ("ECPA"), because AliExpress used consumers' intercepted communications with the intention

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

and for the purpose of disclosing that data in furtherance of a criminal or tortious act; specifically, the unlawful transfer of consumers' bulk sensitive personal data to a prohibited foreign entity in violation of the BSDR.

## PARTIES

19.     Plaintiff John Reyes is and was at all relevant times, an individual and resident of the City of Menifee in San Bernadino County, California. Reyes intends to remain in California indefinitely and makes his permanent home there.

20.     Plaintiff Anthony Malko is and was at all relevant times, an individual and resident of the City of Los Angeles in Los Angeles County, California. Malko intends to remain in California indefinitely and makes his permanent home there.

21.     Plaintiff Eli Silva is and was at all relevant times, an individual and resident of the City of Dublin in Almeda County, California. Silva intends to remain in California indefinitely and makes his permanent home there.

22.     AliExpress is a Delaware business entity with a principal place of business located at 790 E. Colorado Blvd., Suite 520, Pasadena, California 91101. AliExpress is a subsidiary of Alibaba Group, which controls, directs and supervises all actions of AliExpress.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this putative class action lawsuit pursuant to 28 U.S.C. § 1331 because Plaintiffs asserts an individual and representative claim under the ECPA, a federal statute.

24.     The exercise of federal subject matter jurisdiction is also appropriate pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) there are more than 100 members of the Class, (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iv) none of the exceptions apply to this action.

25.     This Court has personal jurisdiction over AliExpress because it conducts

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

business in this judicial district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the judicial district.

26. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiffs reside in this judicial district and a substantial part of the events or omissions giving rise to his claims occurred here.

**FACTUAL ALLEGATIONS**

**A.   ALIEXPRESS AND ALIBABA GROUP**

27. AliExpress is a retail e-commerce platform enabling consumers to buy directly from manufacturers around the world. AliExpress is a subsidiary of Alibaba Group.

28. Alibaba Group is a Chinese technology company specializing in e-commerce, retail, Internet, and technology. Founded on in Hangzhou, Zhejiang, China, the company provides sales services via Chinese and global marketplaces, as well as local consumer, digital media and entertainment, logistics, and cloud computing services.

29. Alibaba Group is headquartered in Hangzhou, Zhejiang, China, and maintains a principal executive office located at No. 969 West Wenyi Road, Yuhang District Hangzhou, Zhejiang Province, China.[3]

30. Because Alibaba Group is headquartered and operates in China, it is subject to Chinese law, including legal regimes that can impose obligations to support, assist, and cooperate with intelligence and security authorities and to maintain secrecy regarding such cooperation, such as China's National Intelligence Law, Cybersecurity Law, and Data Security Law.

31. These laws require Chinese companies and individuals to secretly cooperate with government surveillance efforts and to grant authorities unrestricted

---

[3] Alibaba Group Holding Limited Prospectus Supplement, *available at* https://www.sec.gov/Archives/edgar/data/1577552/000104746919006436/a2240012 6z424b5.htm? (last visited February 19, 2026).

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

access to private user data.

32.    Alibaba Group's operations are subject to Chinese government control, oversight, and compelled disclosure obligations.

33.    These legal obligations require companies headquartered and operating in China—including Alibaba Group—to be subject to compelled assistance, compelled disclosure, secrecy constraints that limit transparency regarding Chinese government access to data.

**B.    THE BULK SENSITIVE DATA TRANSFER RULE**

34.    The BSDR restricts or prohibits U.S. persons from engaging in covered data transactions with covered persons.

35.    A U.S. person includes, *inter alia*, "any entity organized solely under the laws of the United States or any jurisdiction within the United States (including foreign branches)[.]" 28 C.F.R. § 202.256.

36.    A "covered person" includes, *inter alia*, "a foreign person … that is organized or chartered under the laws of, or has its principal place of business in, a country of concern[.]" *Id*. § 202.211.

37.    A "country of concern" includes, *inter alia*, "China," which means "the People's Republic of China [("PRC")], including the Special Administrative Region of Hong Kong and the Special Administrative Region of Macau, as well as any political subdivision, agency, or instrumentality thereof." *Id.* §§ 202.208, 202.601.

38.    A "covered data transaction" is "any transaction that involves any access by a country of concern or covered person to any government-related data or bulk U.S. sensitive personal data and that involves: (1) Data brokerage; (2) A vendor agreement; (3) An employment agreement; or (4) An investment agreement." *Id.* § 202.210.

39.    "Bulk U.S. sensitive personal data" means "a collection or set of sensitive personal data relating to U.S. persons, in any format, regardless of whether the data is anonymized, pseudonymized, de-identified, or encrypted, where such data

-8-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

meets or exceeds the applicable threshold set forth in § 202.205." *Id.* § 202.206.

40. Section 202.205 sets forth the applicable thresholds for being considered "bulk" data. "Bulk" means "any amount of sensitive personal data that meets or exceeds the [listed] thresholds at any point in the preceding 12 months, whether through a single covered data transaction or aggregated across covered data transactions involving the same U.S. person and the same foreign person or covered person[.]" *Id.* § 202.205.

41. The applicable threshold for "covered personal identifiers" is that "collected about or maintained on more than 100,000 U.S. persons[.]" *Id.*

42. The term "covered personal identifiers" means "any listed identifier: (1) In combination with any other listed identifier; or (2) In combination with other data that is disclosed by a transacting party pursuant to the transaction such that the listed identifier is linked or linkable to other listed identifiers or to other sensitive personal data." *Id.* § 202.212.

43. The term "listed identifier" includes, but is not limited to, "any piece of data in any of the following data fields": IP addresses (28 C.F.R. § 202.234(g)); advertising IDs (28 C.F.R. § 202.234(e)); device IDs (28 C.F.R. § 202.234(c)); and cookie data (28 C.F.R. § 202.234(g)).

44. The effective date of the BSDR was April 8, 2025. *Id.* § 202.216.

45. Under the BSDR, "no U.S. person, on or after the effective date, may knowingly engage in a covered data transaction involving data brokerage with a country of concern or covered person." *Id.* § 202.301 (a "Prohibited Data Transaction").

46. A "data brokerage" means "the sale of data, licensing of access to data, or similar commercial transactions, excluding an employment agreement, investment agreement, or a vendor agreement, involving the transfer of data from any person (the provider) to any other person (the recipient), where the recipient did not collect or process the data directly from the individuals linked or linkable to the collected or

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

processed data." *Id.* § 202.214.

47.    Similarly under the BSDR, "no U.S. person, on or after the effective date, may knowingly engage in a covered data transaction involving a vendor agreement, employment agreement, or investment agreement with a country of concern or covered person unless the U.S. person complies with the security requirements (as defined by § 202.248) required by this subpart D and all other applicable requirements under this part." *Id.* § 202.401 (a "Restricted Data Transaction").

48.    An "investment agreement" means "an agreement or arrangement in which any person, in exchange for payment or other consideration, obtains direct or indirect ownership interests in or rights in relation to: (1) Real estate located in the United States or (2) A U.S. legal entity." *Id.* § 202.228.

49.    The "security requirements" defined by section 202.248 means "the Cybersecurity and Infrastructure Agency ('CISA') Security Requirements for Restricted Transactions E.O. 14117 Implementation, January 2025." *Id.* § 202.248.

50.    The CISA Security Requirements for Restricted Transactions E.O. 14117 Implementation, January 2025, require certain organizational- and system-level requirements—including, *inter alia*, implementing certain organizational cybersecurity policies, practices, and requirements; implementing logical and physical access controls to prevent covered persons or countries of concern from gaining access to covered data that does not comply with the data-level requirements; implementing risk assessment and mitigation strategies outlining how implementation will prevent access to covered data that is linkable, identifiable, unencrypted, or decryptable using commonly available technology by covered persons and/or countries of concern—and certain data-level requirements— including, *inter alia*, applying data minimization and data masking strategies to reduce the need to collect, or sufficiently obfuscate, respectively, covered data to prevent visibility into covered data, and applying encryption techniques to protect

-10-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

covered data during the course of restricted transactions.[4]

51.    As detailed above, AliExpress is a "U.S. person" because it is organized under the laws of Delaware and headquartered in California. Alibaba Group is a "covered person" because it is a foreign person whose principal place of business is in China and subject to Chinese jurisdiction.

52.    As detailed above and below, AliExpress engages in Prohibited or Restricted Data Transactions with Alibaba Group, without the requisite security requirements, in violation of the BSDR.

## C.    ALIEXPRESS'S WEBSITE USES TRACKERS WHICH EXPOSE AMERICANS' BEHAVIORAL DATA TO FOREIGN ADVERSARIES.

53.    When a user lands on the homepage of Website, the Website loads numerous first- and third-party tracking implementations that measure and record user data.

54.    These tracking technologies are small pieces of code that AliExpress intentionally integrated into the Website to track user behavior and to transmit data to first- and third-party platforms.

55.    AliExpress intentionally programmed and deployed on the Website such tracking technologies, provided by Facebook, Microsoft, Google, Criteo, Neustar, Magnite, RTB House, Taboola, TripleLift, TPMN, InMobi, TradeDesk, and Pinterest, among numerous others (collectively and/or individually, the "Tracking Technologies").[5]

56.    Through the Tracking Technologies, AliExpress collects bulk personal

---

[4] *See, e.g.,* Security Requirements for Restricted Transactions Pursuant to Exec. Order 14117, Preventing Access to Americans' Bulk Sensitive Personal Data and United States Government-Related Data by Countries of Concern *available at* https://www.cisa.gov/sites/default/files/2025-01/Security_Requirements_for_Restricted_Transaction-EO_14117_Implementation508.pdf, archived at https://perma.cc/Y9AT-FFFU

[5] On information and good faith belief, this list is only a portion of the Tracking Technologies that Defendant implemented on the Website.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

data, from users of the Website. This data includes persistent identifiers—including IP addresses, advertising IDs, and cookie data—and the full-page context—including full-string URLs revealing search terms, and the pages product viewed.

57. On information and good faith belief, AliExpress has collected or maintained this sensitive personal data relating to more than 100,000 U.S. persons (including Plaintiffs and the putative class members) following the effective date of the BSDR, and therefore this information constitutes "bulk U.S. sensitive data" under the BSDR.

58. Indeed, publicly available web traffic reports estimate that in January 2026 alone, more than 46.5 million U.S.-based devices visited the Website.[6]

59. Without appropriate safeguards or excluding covered foreign parents, AliExpress knowingly permits access to, or transfer of, such bulk U.S. sensitive personal data to entities or persons that qualify as covered persons under the BSDR, including its foreign parents that are directly or indirectly controlled by persons in China, such as Alibaba Group.

60. AliExpress's actions create undue risks to national security and to the privacy of U.S. persons because providing access to sensitive personal data to covered persons is prohibited or restricted without strict compliance with the statutes and regulations promulgated under Executive Order 14117 and related federal law.

61. Despite the sensitivity of this data, AliExpress did not require users to consent to the operation of the Tracking Technologies.

62. As a result, Website users' personal information, including persistent identifiers (*e.g.,* cookie IDs, device IDs, mobile advertising IDs, and IP addresses), device metadata (*e.g.*, screen resolution, browser version, operating system, and language settings), and contextual information such as full URLs and referring pages are surreptitiously obtained by the Tracking Technologies.

---

[6] AliExpress.com Website Analysis for January 2026, *available at* https://analytics.explodingtopics.com/website/aliexpress.com (last visited Feb. 24, 2026).

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

63. Such user data can be correlated and combined with other data sets to compile comprehensive user profiles that reflect consumers' behavior, preferences, and demographics.

64. Those in possession of this information can gain deep understanding of users' behavioral traits and characteristics.

65. By installing and using the Tracking Technologies, AliExpress enabled comprehensive data collection regarding users' communications and personal identifiers covered by the BSDR so that it could then share that information with entities covered under the BSDR, including Alibaba Group.

66. This is significant because, in the hands of a foreign adversary, the data intercepted by the Tracking Technologies can be used for far more than just e-commerce.

67. A company like Alibaba Group, operating under Chinese jurisdiction, can use this data to build detailed dossiers on U.S. residents, identify psychological or financial vulnerabilities, and target individuals in sensitive roles—such as jurists, military personnel, journalists, politicians, or dissidents.

68. This data can be weaponized for profiling, coercive targeting, or even blackmail, all without the user's knowledge that their information is being transmitted to a foreign-controlled entity.

69. Indeed, such vulnerabilities prompted the passage of the BSDR in the first place.[7]

**D.    ALIEXPRESS KNOWINGLY VIOLATES THE BSDR.**

70. On April 8, 2025, the U.S. Department of Justice issued the BSDR, codified at 28 C.F.R. Part 202, to restrict the transfer of Americans' bulk sensitive

---

[7] Justice Department Issues Final Rule Addressing Threat Posed by Foreign Adversaries' Access to Americans' Sensitive Personal Data *available at* https://www.justice.gov/archives/opa/pr/justice-department-issues-final-rule-addressing-threat-posed-foreign-adversaries-access, archived at https://perma.cc/8MU9-5ES5 (last visited Jan. 27, 2026).

-13-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

personal data to "countries of concern," including China.

71.    Under the BSDR, it is unlawful to transfer "bulk U.S. sensitive personal data"—including the categories of persistent identifiers that AliExpress obtains from the Tracking Entities—to certain entities associated with adversarial foreign governments.

72.    AliExpress, Alibaba Group, and its affiliates and subsidiaries, are a recognized national security threat.

73.    For example, in January of 2023, the United States Trade Representative issued a press release for the "2022 Review of Notorious Markets" explicitly stating that the list "includes… China-based online market[] AliExpress" acknowledging AliExpress as a recurring U.S. national security-policy concern.[8] Alibaba's securities disclosures also stated that "in past years and again in January 2023, the USTR identified … AliExpress … as a 'notorious market,'" and warned of continuing regulatory risk from such identification.[9]

74.    In May 2025, the Chairmen of the House Select Committee on the Strategic Competition Between the United States and the Chinese Communist Party, and other members of Congress, wrote to the chairman of the SEC, to request that it delist the Alibaba Group because it has Chinese military links that put US national

---

[8] USTR Releases 2022 Review of Notorious Markets (Jan. 31, 2023) *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2023/january/ustr-releases-2022-review-notorious-markets-counterfeiting-and-piracy

[9] Alibaba Group Form 20F *available at* https://www.sec.gov/Archives/edgar/data/1577552/000095017023033752/baba-20230331.htm. The same disclosure also recognized the risk of "claims relating to data and privacy protection" and that "overseas laws and regulations may impose requirements that are more stringent than, or which conflict with, those in China."[9] Additionally, the Alibaba Group recognized that it "may be prohibited by laws, regulations or government authorities in one jurisdiction from complying with subpoenas, orders or other requests from courts or regulators of other jurisdictions, including those relating to data held in or with respect to persons in these jurisdictions. Our failure or inability to comply with the subpoenas, orders or requests could subject us to fines, penalties or other legal liability[.]" *Id.*

-14-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

security at risk.[10]

75. The letter described the Alibaba Group as "a Chinese technology conglomerate designated by the Chinese government to lead national Ai development [that is] deeply embedded in China's military and surveillance systems."[11] It also noted that Alibaba "is reportedly tasked by PRC intelligence agencies to process data on a 'daily' basis.[12] Moreover, Alibaba has maintained a CCP Party committee since 2008, now led by a former Chinese police officer and comprising over 2,000 members. In 2022, CCP-linked entities acquired 'golden shares' in key Alibaba subsidiaries, securing board seats and veto power over sensitive content and data operations."[13]

76. More recently, the Pentagon briefly added Alibaba Group to a list of companies that aid the Chinese military.[14]

77. Nonetheless, AliExpress admits in its Website's Privacy Policy that it

---

[10] May 2, 2025 Letter to Chairman Paul Atkins of the U.S. Securities and Exchange Commission *available at* https://chinaselectcommittee.house.gov/sites/evo-subsites/selectcommitteeontheccp.house.gov/files/evo-media-document/SEC%20Letter%20Updated%20compressed.pdf (last visited Feb. 19, 2026).

[11] *Id.*

[12] Chinese companies regularly confirm that they receive many hundreds of requests from various Chinese public authorities regarding user data per year. *See, e.g., Xiaomi Transparency Report Government Requests for User Information available at* https://xiaomi.gcs-web.com/static-files/83ae0ea4-2481-4e02-a3e6-75422a8c6df9 (last visited Feb. 24, 2026).

[13] *Supra* n.10 (citing Zach Dorfman, *Tech Giants Are Giving China a Vital Edge in Espionage, Foreign Policy* (Dec. 23, 2020), https://foreignpolicy.com/2020/12/23/china-tech-giants-process-stolen-data-spy-agencies/; *China Acquires 'Golden Shares' in Two Alibaba Units*, Reuters (Jan. 13, 2023), https://www.reuters.com/technology/china-moving-take-golden-shares-alibaba-tencent-units-ft-2023-01-13/#:~:text=Alibaba%20has%20been%20one%20of,rights%20for%20key%20business%20decisions).

[14] *US Briefly Names Alibaba, Baidu as Firms Aiding China's Military*, Bloomberg *available at* https://www.bloomberg.com/news/articles/2026-02-13/us-to-put-alibaba-on-list-for-aiding-china-s-military-reuters (describing adding Alibaba to the list, and subsequently removing it) (last visited Feb. 24, 2026).

-15-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

transfers users' personal information to the Alibaba Group and the People's Republic of China. In the section, "International Transfers of Personal data" it discloses that it stores "personal data processed through the [Website] in . . . China."[15] And the Privacy Policy expressly discloses that such personal data is shared with "Alibaba group entities and affiliated companies[.]"

78. The personal data at issue expressly includes, among other things, "name; username; birthday; gender; address; phone number; email address"; "credit card or similar payment information [paid with,] billing and delivery address"; "email, phone, online chat service, social media, mail, [and] instant chat" communications; "details of the goods purchased"; "IP addresses, date and time of access to the [Website], device type, unique device identification numbers, browser type, broad geographic location…, browsing patterns and details of how [users] have interacted with" the Website; "browser software, operating system, software and hardware attributes, [and] pages viewed."[16]

79. Moreover, AliExpress discloses in its Privacy Policy that it has "to make mandatory disclosures to law enforcement."[17] Because these legal obligations are not

[15] AliExpress Privacy Policy *available at* https://terms.alicdn.com/legal-agreement/terms/suit_bu1_aliexpress/suit_bu1_aliexpress201909171350_82407_9_15_30867.html?spm=a1zaa.8161610.0.0.14b17c5a9xSwYD (last visited Feb. 24, 2026). On October 14, 2025 AliExpress updated its privacy policy. AliExpress October 14, 2025 Privacy Policy *available at* https://terms.alicdn.com/legal-agreement/terms/suit_bu1_aliexpress/suit_bu1_aliexpress201909171350_82407.html (last visited Feb. 24, 2026). The updated Privacy Policy says that users located in the United States' personal information is stored in the United States and Singapore. *Id.* However, the BDSR addresses access—not mere storage—and, the same Privacy Policy simultaneously discloses that user data is shared with "Alibaba group entities and affiliated companies" without geographic restriction, and specifically names Alibaba.com China Limited—a PRC-domiciled entity—and ZhongAn Online P&C Insurance Co., Ltd., a Shanghai-listed insurer, as recipients of users' personal data.

[16] AliExpress Privacy Policy *available at* https://terms.alicdn.com/legal-agreement/terms/suit_bu1_aliexpress/suit_bu1_aliexpress201909171350_82407_9_15_30867.html?spm=a1zaa.8161610.0.0.14b17c5a9xSwYD (last visited Feb. 24, 2026).

[17] *Id.*

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

limited to disclosures to U.S. law enforcement, they also impliedly include "mandatory disclosures" under the Chinese intelligence laws described above.

80.    Further, the Website's Privacy Policy purports to safeguard personal information transferred to parties that do not provide for an adequate level of data protection, like those based in China, by maintaining agreements with confidentiality provisions and standard contractual clauses that govern the transfer, processing and protection of personal information.[18]

81.    However, under the BSDR, a U.S. entity that engages in a restricted covered data transaction must do more than maintain agreements with confidentiality provisions—it must ensure the bulk U.S. data is not accessible by countries of concern.

82.    This is not inadvertent—AliExpress and the Alibaba Group are, or should be, aware of the requirements of the BSDR.

83.    Indeed, in its 2025 annual report, Alibaba Group recognized the regulatory risk related to the "increasing number of new legal requirements in various jurisdictions present increased challenges and risks in relation to policies and procedures relating to data collection, local storage, access, **cross-border transfer**, disclosure, protection and privacy . . . [which] could subject [Alibaba Group] to significant penalties and negative publicity, [and] require us to change our data and other business practices[.]"[19]

84.    The report also expressly addressed the BSDR and its inherent tension with Chinese laws requiring covered persons to provide the PRC access to personal data:

> On December 27, 2024, the U.S. Department of Justice, or the DOJ, issued **the Final Rule implementing the Executive Order on**

---

[18] *Id.*

[19] AliExpress Holdings, Form 8-K *available at* https://www.sec.gov/Archives/edgar/data/1502034/000119312520244669/d26824d 8k.htm (last visited Feb. 19, 2026).

-17-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

**Preventing Access to Americans' Bulk Sensitive Personal Data and United States Government-Related Data by Countries of Concern**, which **became effective on April 8, 2025 and prohibits and restricts certain transactions that may result in access to bulk U.S. sensitive personal data and government-related data by countries of concern, including China**, and requires service providers to enhance their technology infrastructure to meet specified security requirements. These laws and other similar rules and regulations that have been or may be implemented relating to cross-border data transfers impose additional and substantial financial, operational, administrative and compliance burdens on us, and failure to comply with these requirements will result in suspension of the relevant business, significant amounts of fines and other administrative penalties, regulatory investigations and actions against us, significant damage to our reputation or even criminal liabilities. . . . **On the other hand, regulators in China and other jurisdictions in which we operate may implement measures to ensure that encryption of user data does not hinder law enforcement agencies' access to that data**. For example, according to the PRC Cybersecurity Law and relevant regulations, network operators, including us, are obligated to provide assistance and support in accordance with the law for public security and national security authorities to protect national security or assist with criminal investigations. Non-compliance or compliance with these laws and requirements in manners that are perceived as harming privacy could lead to significant damages to our reputation and proceedings and actions against us by regulators and private parties. **Conflicting regulatory requirements in China and overseas jurisdictions could increase our compliance costs and subject us to enhanced regulatory scrutiny**.[20]

85.     Further, AliExpress and the Alibaba Group have been the subject of GDPR complaints addressing unlawful data transfers to China.[21] Those complaints

---

[20] *Alibaba Group Hong Kong Annual Report for Fiscal Year 2025 in English (adjusted version) available at* https://www.sec.gov/Archives/edgar/data/1577552/000095017025090161/baba-ex15_5.htm (last visited Feb. 19, 2026) (emphasis supplied).

[21] *TikTok, AliExpress, SHEIN & Co surrender Europeans' data to authoritarian China* (Jan. 16, 2025) *available at* https://noyb.eu/en/tiktok-aliexpress-shein-co-surrender-europeans-data-authoritarian-china (last visited Feb. 19, 2026).

-18-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

recognized that "each subsidiary of Alibaba . . . is realistically obliged to share data with their Chinese headquarter."[22]

86.    Further, as "a subsidiary of a Chinese company and part of the Alibaba Group, [AliExpress] receives a very high number of requests by Chinese government bodies and has to give access to personal data in case of such requests[.]"[23]

87.    Despite the DOJ's clear guidance, and AliExpress and the Alibaba Group's knowledge of the BSDR, AliExpress has continued to transmit sensitive user data to China.

88.    These transmissions include identifiers covered by the BSDR, browsing behavior, and contextual metadata that enable AliExpress, and its foreign parent and affiliates, to track, profile, and retain data about U.S. residents.

89.    AliExpress's conduct is not accidental, peripheral, or the result of isolated technical missteps.

90.    Rather, AliExpress knowingly facilitated the export of Americans' behavioral data to a foreign adversary.

91.    In doing so, it disregarded binding federal law, the BSDR, created specifically to address what the U.S. government has called an "unusual and extraordinary threat" to the national security and foreign policy of the United States.

**E.    FACTS SPECIFIC TO REPRESENTATIVE PLAINTIFFS.**

92.    Plaintiff Reyes is a resident of Menifee, California.

93.    On and around September 16, 2025, Reyes visited the Website on multiple occasions.

94.    During these visits to the Website, Reyes navigated multiple product pages utilizing full-string URLs displaying the product viewed and displaying that

---

[22] *noyb – European Center for Digital Rights v. Alibaba.com Singapore E-Commerce Private Limited*, Case-No: C093-01 (Jan. 16, 2025) *available at* https://noyb.eu/sites/default/files/2025-01/Aliexpress_complaint_redacted_FIN%20EN.pdf (last visited Feb. 19, 2026).

[23] *Id.*

-19-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

he was searching for tools and other products.

95.   Reyes also searched the Website for, *inter alia*, a 14mm Quartz Tipped Screwdriver, which he ultimately purchased.

96.   While Reyes was actively viewing the Website, his browser loaded code implemented by Defendant and operated by the Tracking Technologies.

97.   This code initiated automated requests sent from Reyes's browser to third party servers and triggered the interception of his data.

98.   Those requests featured persistent identifiers uniquely associated with Reyes —including his cookie IDs, device IDs, IP addresses, and browser metadata— along with the full URL of the specific page that Reyes was viewing at the time, which displayed the specific product he was viewing, and displayed that he was searching for various products, purchased certain products, and his associated personal data described above.

99.   Plaintiff Malko is a resident of Los Angeles, California.

100.  On and around November 25, 2025, Malko visited the Website on multiple occasions.

101.  During these visits to the Website, Malko navigated multiple product pages utilizing full-string URLs displaying the product viewed and displaying that he was searching for earplugs and other products.

102.  Malko also searched the Website for, *inter alia*, Silicone Eartips Ergonomic Earplugs, which he ultimately purchased.

103.  While Malko was actively viewing the Website, his browser loaded code implemented by Defendant and operated by the Tracking Technologies.

104.  This code initiated automated requests sent from Malko's browser to third party servers and triggered the interception of his data.

105.  Those requests featured persistent identifiers uniquely associated with Malko—including his cookie IDs, device IDs, IP addresses, and browser metadata— along with the full URL of the specific page that Malko was viewing at the time,

-20-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

which displayed the specific product he was viewing, and displayed that he was searching for various products, purchased certain products, and his associated personal data described above.

106.   Plaintiff Silva is a resident of Dublin, California.

107.   On and around April 19, 2025, Silva visited the Website on multiple occasions.

108.   During these visits to the Website, Silva navigated multiple product pages utilizing full-string URLs displaying the product viewed and displaying that he was searching for lightbulbs and other products.

109.   Silva also searched the Website for, *inter alia*, a 220V 40W Edison Lightbulb, which he ultimately purchased.

110.   While Silva was actively viewing the Website, his browser loaded code implemented by Defendant and operated by the Tracking Technologies.

111.   This code initiated automated requests sent from Silva's browser to third party servers and triggered the interception of his data.

112.   Those requests featured persistent identifiers uniquely associated with Silva—including his cookie IDs, device IDs, IP addresses, and browser metadata—along with the full URL of the specific page that Silva was viewing at the time, which displayed the specific product he was viewing, and displayed that he was searching for various products, purchased certain products, and his associated personal data described above.

113.   Defendant then used Plaintiffs' intercepted communications for its own purposes, including enriching persistent profiles and databases which were then transferred to, or accessible by, its parent company, Alibaba Group, in direct violation of the BSDR. Indeed, AliExpress admits in the Website's Privacy Policy that AliExpress transfers users' personal information to the Alibaba Group and the People's Republic of China.

114.   As a result, Alibaba Group, a covered person under the BSDR, received

-21-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

detailed information about Plaintiffs' online behavior and interests, without their knowledge or consent.

115. AliExpress's covert tracking and sharing of Plaintiffs' sensitive data violates their reasonable expectation of privacy.

116. This data, particularly when appended to persistent profiles, reveals sensitive details about Plaintiffs. Aggregating and utilizing this information without Plaintiffs' knowledge or consent goes far beyond what any reasonable consumer would expect and constitutes a serious intrusion into private life.

117. Plaintiffs did not consent to the interception, enrichment, or foreign transmission of their browsing data.

118. AliExpress's conduct caused Plaintiffs concrete and particularized harm, including the unauthorized disclosure of personal information to a foreign entity, the invasion of their privacy, and the loss of control over how and where their browsing behavior was used and shared.

## CLASS ALLEGATIONS

119. Plaintiffs bring this proposed class action lawsuit pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and a Class (the "Class"), a California subclass (the "California Subclass") and a California purchaser subclass (the "California Purchaser Subclass" and together with the Class and the California Subclass, the "Classes")  of all others similarly situated, defined as follows:

a. **Nationwide Class**: All individuals in the United States whose electronic communications with the Website were intercepted and whose communications and personal data—including persistent identifiers and behavioral activity—was used on or after April 8, 2025.

b. **California Subclass**: All individuals who resided in the State of California at the time their electronic communications with the Website were intercepted.

-22-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

c.  **California Purchaser Subclass**: All members of the California Subclass who resided in the State of California and made purchases on the Website and had electronic communications with the Website intercepted.

120. Excluded from the Classes are: (i) any Judge or Magistrate presiding over this action and members of their families; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its officers and directors; (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiffs' counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

121. **Numerosity**: The exact number of Subclasses members is unknown and not available to Plaintiffs at this time, but individual joinder is impracticable. On information and belief, Defendant has many thousands of users who fall into the definition of the Class and Subclass. Subclasses members can be identified through Defendant's records.

122. **Commonality and Predominance**: There are questions of law and fact common to the claims of Plaintiffs and the alleged Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes members include, but are not necessarily limited to the following:

a.  Whether Defendant used tracking technologies to cause users' web browsers to reroute electronic communications—including URLs, metadata, and behavioral activity;

b.  Whether Defendant used a device, as defined under 18 U.S.C. § 2510(5), to intercept the contents of communications from Plaintiffs and the Classes;

c.  Whether Defendant obtained valid consent from Plaintiffs and the Classes to aid in the interception and disclosure of their electronic communications to third parties, and to use such communications;

d.  Whether the data transmitted by Defendant constitutes "bulk U.S.

-23-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

sensitive personal data" under the BSDR;

e.  Whether Defendant's transmission of data to its Chinese-controlled entities constitutes a prohibited or restricted transaction under the BSDR;

f.  Whether Defendant acted knowingly and with intent to share the information;

g.  Whether Defendant's interception and disclosure of users' communications fall within the crime-tort exception to the ECPA's party-consent provision;

h.  Whether Defendant was unjustly enriched at the expense of the Classes;

i.  Whether Defendant's actions violate California laws invoked herein; and

j.  Whether Plaintiffs and members of the Classes are entitled to damages, restitution, injunctive and other equitable relief, reasonable attorneys' fees, prejudgment interest and costs of this suit.

123.  **Typicality**: Plaintiffs' claims are typical of the claims of members of the Classes. The claims arise from a common nucleus of operative fact—inter alia, the surreptitious interception and illicit transfer of their personal information to a foreign adversary of the United States. Plaintiff, like all members of the Classes, had his information unlawfully intercepted and used, and has been injured by Defendant's misconduct at issue.

124.  **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Classes. That is, Plaintiffs and the members of the Classes sustained injuries and damages as a result of Defendant's conduct. Plaintiffs also have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiffs nor their

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

counsel have any conflicts with or interests adverse to the Classes.

125. **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Classes is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint as well as the risk of inconsistent adjudication. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Through a class action, economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

126. Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definitions" based on facts learned through additional investigation and in discovery.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
18 U.S.C §2510, *et seq.*
(*On Behalf of Plaintiffs & the Nationwide Class*)**

127. Plaintiffs and the Nationwide Class members incorporate the foregoing allegations as if fully set forth herein.

128. The ECPA prohibits any person from "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

129. The ECPA also prohibits any person from "intentionally us[ing], or endeavor[ing] to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(d).

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

130.  18 U.S.C. § 2520(a) provides a private right of action to any person whose wire, oral, or electronic communication is intercepted or used in violation of 18 U.S.C § 2511.

131.  Defendant knowingly and intentionally distributes and maintains the Tracking Technologies on the Website for the purpose of rerouting user communications to the Tracking Technologies' servers for Defendant's later use.

132.  The Tracking Technologies intentionally capture the contents of users' interactions with the Website and purposefully transmit them to the Tracking Technologies' servers.

133.  The Tracking Technologies' tracking code executed automatically within Plaintiffs' and Nationwide Class members' browsers during the page load process without Plaintiffs' consent.

134.  This code intercepted the contents of Plaintiffs' and Nationwide Class members' interactions with the Website by rerouting their communications—including but not limited IP addresses, identifiers, full URLs, page titles, and the content of the page—to the Tracking Technologies.

135.  These interceptions occurred as part of the browser's rendering of the Website, before Plaintiffs or members of the Nationwide Class could detect the transmissions or consent to the transmissions.

136.  When Plaintiffs and the Nationwide Class members navigate the Website, the Tracking Technologies' code causes their browsers to transmit IP addresses, identifiers, full URLs, page titles, related to Plaintiffs and the Nationwide Class members in real time.

137.  These transmissions occur without the user's awareness or consent and are initiated automatically during the same browser session in which the user communicates with the Website.

138.  The Tracking Technologies' capture of these communications constitutes an unlawful interception under the ECPA. Defendant's subsequent use of

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

these communications constitutes an unlawful use under the ECPA.

139. **Contents of a Communication:** The data intercepted by the Tracking Technologies from Plaintiffs and members of the Nationwide Class includes full-page URLs and identifiers. These qualify as the "contents" of a communication under 18 U.S.C. § 2510(8) because they reveal the substance and subject matter of the user's communications with the Website.

140. **Use of a Device:** The technologies the Tracking Technologies use to intercept this data—including but not necessarily limited to web beacons, pixels, software development kits, APIs, JavaScript, real-time bidding and other scripts, and cookies—constitute "devices" under 18 U.S.C. § 2510(5), which includes any device or apparatus used to intercept electronic communications.

141. **Lack of Consent:** Plaintiffs and Nationwide Class members did not consent to the Tracking Technologies' interception or disclosure of their communications.

142. The Website did not provide clear or conspicuous notice that user interactions would be surveilled and routed to foreign entities, and Plaintiffs and Nationwide Class members lacked a reasonable means to opt out of the Tracking Technologies' data collection and sharing. There was no actual or implied consent under applicable law.

143. **Crime-Tort Exception:** The "party exception" in 18 U.S.C. § 2511(2)(d) does not apply. At the time of the interception, the Tracking Technologies' interception and, Defendant's use of these communications, was undertaken knowingly and intentionally for the purpose of committing a criminal and tortious act—namely, the unlawful transmission of bulk U.S. sensitive personal data to a covered foreign entity in violation of the Rule, 28 C.F.R. Part 202.

144. On or after April 8, 2025, Defendant knowingly engaged in prohibited or restricted data transactions with Alibaba Group, a foreign-owned entity, organized under the laws of China, with its principal place of business in China, without the

-27-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

requisite security requirements, in violation of the Rule. 28 C.F.R. §§ 202.301, 202.401.

145. Defendant is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in California. Because Defendant is organized under the laws of the United States and is an entity in the United States, Defendant is a "U.S. person" under 28 C.F.R. § 202.256.

146. Alibaba Group, and related affiliates, qualify as a "covered person" under 28 C.F.R. § 202.211(a) because they are Chinese companies and/or have substantial operations and executive oversight in the People's Republic of China—a "country of concern" under the Rule.

147. Alibaba Group, and related affiliates, maintain a significant presence in China and are subject to Chinese law, including China's National Intelligence Law, Cybersecurity Law, and Data Security Law.

148. These laws compel Chinese companies and individuals to secretly cooperate with government surveillance efforts and grant authorities unrestricted access to private user data.

149. Alibaba Group's operations are subject to Chinese government control, oversight, and compelled disclosure obligations.

150. The Tracking Technologies initiate requests which result in the transmission of numerous protected "listed identifiers" under the Rule, including but not limited to IP addresses (28 C.F.R. § 202.234(g)), advertising IDs (28 C.F.R. § 202.234(e)), and cookie data (28 C.F.R. § 202.234(g)) to and through the Tracking Technologies' and into Defendant's possession.

151. Defendant then transmits or provides access to these protected identifiers together, including, for example, transmitting a given user's IP address along with the user's cookie data and advertising IDs, such that the identifiers are clearly linked with one another and are associated or reasonably capable of being associated with each related user, to Alibaba Group.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

152. This information qualifies as "covered personal identifiers" and "sensitive personal data" under the BSDR because these identifiers are shared with Alibaba Group (i) in combination with at least one other listed identifier, or (ii) in combination with other data such that the listed identifier is or can reasonably be associated with other listed identifiers or other sensitive personal data. *See* 28 C.F.R. §§ 202.212(a), 202.249(a).

153. On information and belief, AliExpress has collected or maintained this sensitive personal data relating to more than 100,000 U.S. persons (including Plaintiffs and Nationwide Class members) following the effective date of the BSDR, and therefore this information constitutes "bulk U.S. sensitive data" under 28 C.F.R. § 202.206.

154. Defendant provides this data to Alibaba Group and affiliated "covered persons." Indeed, AliExpress admits in the Website's Privacy Policy that AliExpress transfers users' personal information to its parent, Alibaba Group, and to the People's Republic of China, without the requisite safeguards and security controls. AliExpress's provision of this bulk U.S. sensitive data to Alibaba Group and affiliated covered persons, constitutes a covered data transaction involving data brokerage or investment agreement under 28 C.F.R. §§ 202.210, 202.214, 202.301, 202.401.

155. AliExpress knew or reasonably should have known that it had engaged and was engaging in covered data transactions involving data brokerage or investment agreement in violation of the BSDR.

156. Because AliExpress knowingly engaged and engages in covered data transactions with Alibaba Group, a covered person, AliExpress has violated the BSDR's prohibition of data-brokerage transactions under 28 C.F.R. § 202.301 and/or of engaging in restricted transactions without the requisite security controls under 28 C.F.R. § 202.401.

157. In addition to AliExpress's tortious and criminal intent to violate the

-29-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

BSDR by sharing certain information with entities subject to the jurisdictional control of China, as described further below, the interceptions by the Tracking Technologies were also knowingly and intentionally performed for the independent purpose of committing tortious acts in violation of California common law, specifically:

a.      Violating Plaintiffs' and the class members' right to privacy through the creation and dissemination of highly detailed identity profiles, enriched by the contents of Plaintiffs' and the class members' communications intercepted by the Tracking Technologies, as described herein; and

b.      Committing the tort of intrusion upon seclusion by using the contents of the intercepted communications to facilitate the creation of highly detailed identity profiles on Plaintiffs' and class members, which were then used and disseminated as described herein.

158. Because the Tracking Technologies intentionally and knowingly intercepted and disclosed, and Defendant intentionally and knowingly used Plaintiffs' and class members' communications for the purpose of committing these criminal and tortious acts, it is not shielded by the "party exception" under the ECPA.

159. Plaintiffs and the Nationwide Class suffered harm as a result of Defendant's violations of the ECPA, including the transmission of their sensitive data to a foreign adversary, and therefore seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and disgorgement of profits obtained by Defendant as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(c)(2), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

160. Plaintiff, individually and on behalf of the Nationwide Class members, seeks all monetary and non-monetary relief allowed by law, including actual damages, statutory damages, punitive damages, preliminary and other equitable or declaratory relief, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**CALIFORNIA INVASION OF PRIVACY ACT**
**Cal. Penal Code § 631, *et seq.***
***(On Behalf of Plaintiffs & the California Subclass)***

-30-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

161. Plaintiffs and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

162. The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638.

163. The Act begins with its statement of purpose: "The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping on private communications and the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

164. California Penal Code § 631(a) provides in relevant part:

> any person who, by means of any machine, instrument, or contrivance, or in any other manner … willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

165. A defendant must show it had the consent of all parties to the communication.

166. At all relevant times, Defendant aided, agreed with, and conspired with third parties to track and intercept Plaintiffs' and the California Class members' internet communications exchanged with Defendant while accessing Defendant's website. Defendant assisted these interceptions without the requisite consent from Plaintiffs and the California Class members.

167. The Tracking Technologies intercepted these communications without

-31-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

consent from all parties to the communications.

168. The Tracking Technologies intended to learn, and did learn, some meaning of the content in the communications including without limitation in the URLs, search queries, and other content described herein exchanged between the California Class members and Defendant on Defendant's Website.

169. Defendant, when aiding and assisting Tracking Technologies' eavesdropping, intended those third parties to learn the content of the visitor's communications.

170. Defendant used, or attempted to use, information so obtained or, in the alternative, aided and assisted Alibaba Group in using or attempting to use, information so obtained.

171. The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and, even if they do not, the tracking technology provided by the third parties falls within the broad catch-all category of "any other manner":

a. The computer codes and programs that the Tracking Technologies used to track Plaintiffs' and the Class members' communications while they navigated the Website;

b. Plaintiffs' and Class members' browsers;

c. Plaintiffs' and Class member's computing and mobile devices;

d. The web and ad servers of the Tracking Technologies;

e. The computer codes and programs that the Tracking Technologies used to track and intercept the Plaintiffs' and Class members' communications while they were using a browser to visit Defendant's Website.

172. The tracking and interception of Plaintiffs' and Class members' communications while they were using a web browser or mobile application to visit Defendant's Website originated in and was executed in California.

173. Pursuant to California Penal Code § 637.2, Plaintiffs and the California

-32-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Class members have been injured by the violation of California Penal Code § 631 and each seek damages for the greater of $5,000 or three times the actual amount of damages, as well as injunctive relief.

### THIRD CAUSE OF ACTION

**CALIFORNIA INVASION OF PRIVACY ACT**
**Cal. Penal Code § 632, *et seq.***
**(On Behalf of Plaintiffs & the California Subclass)**

174. Plaintiffs and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

175. California Penal Code Section 632(a) provides that:

> [E]very person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished[.]

176. The data collected on Defendant's Website constitutes "confidential communications," as that term is used in Section 632, because class members had an objectively reasonable expectation of privacy in the circumstances.

177. Defendant intentionally used an electronic recording device—specifically, the tracking technology embedded within the Website—to eavesdrop upon and record these confidential communications.

178. This technology constitutes an "electronic amplifying or recording device" within the meaning of Section 632(a) because it is specifically designed to capture, record, and transmit user interactions and communications in real-time for analytics and behavioral tracking purposes.

179. Defendant intentionally implemented and activated this recording technology within its Website with full knowledge that it would capture and record users' confidential communications.

-33-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

180. Defendant's recording of Plaintiffs' and California Subclass members' confidential communications was accomplished without the requisite consent.

181. Defendant's conduct was undertaken intentionally and with knowledge that the Tracking Technologies would record confidential communications without the requisite consent.

182. The confidential communications that were unlawfully recorded include protected information that individuals provided with reasonable expectations of confidentiality.

183. Defendant is directly liable under section 632. Alternatively, Defendant is liable for aiding in violations of section 632 by the Tracking Technologies and/or Alibaba Group.

184. As a direct and proximate result of Defendant's violations of Section 632, Plaintiffs and the California Subclass members have suffered harm including invasion of their privacy rights, violation of confidentiality and protection by the BSDR, and loss of control over their sensitive information.

185. Unless enjoined and restrained by this Court, Defendant will continue to commit these violations. Plaintiffs and Class members have a reasonable fear that their confidential communications will continue to be unlawfully recorded if they use the Website.

186. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and the California Class members have been injured by the violations of Cal. Penal Code § 632, and each seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### (*On Behalf of Plaintiffs & the Nationwide Class*)

187. Plaintiffs and the Nationwide Class members incorporate the foregoing allegations as if fully set forth herein.

-34-

188. Defendant has been unjustly enriched at the expense of Plaintiffs and Nationwide Class members through its unauthorized collection, use, and monetization of their personal data.

189. Plaintiffs and Nationwide Class members conferred benefit upon Defendant by providing valuable information through their use of the Website.

190. Such sensitive information commands exceptional value due to its predictive power and marketing utility.

191. Defendant received and retained this benefit by intercepting, collecting, and transmitting Plaintiffs' and Nationwide Class members' sensitive to the Tracking Technologies and Alibaba Group through embedded technology without authorization or consent.

192. Defendant has been unjustly enriched through several mechanisms:

a.   **Data Monetization:** Defendant derives commercial value from sharing users' information with third parties for marketing analytics, behavioral targeting, and user profiling purposes;

b.   **Cost Avoidance:** Defendant avoided the substantial costs of obtaining proper consent, implementing adequate privacy protections, and securing lawful access to this valuable data;

c.   **Competitive Advantage:** Defendant gained unfair competitive advantages by leveraging detailed data profiles to optimize its platform and marketing without bearing the costs associated with compliant data collection.

d.   **Enhanced Platform Value:** The unauthorized collection of comprehensive user data increases the overall value and effectiveness of Defendant's platform, and the PRC's surveillance apparatus.

193. Defendant obtained this benefit through unlawful interception and unauthorized disclosure of information in violation of the BSDR, ECPA, Cal. Penal Code §§ 631-632, and/or the CDAFA.

194. Whereas Plaintiffs and Nationwide Class members provided this

-35-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

valuable information with a reasonable expectation of privacy and BSDR compliance, Defendant actively concealed its data collection and sharing practices from users who were unaware their sensitive information was being intercepted and monetized.

195.    Defendant's retention of these benefits violates fundamental principles of fairness and equity, as Defendant has profited from the unauthorized exploitation of sensitive and valuable personal information without providing any compensation or benefit to the individuals whose privacy was violated.

196.    Plaintiffs and Nationwide Class members have no adequate remedy at law for Defendant's Unjust Enrichment, as they cannot recover the specific value of their appropriated data through traditional damages calculations.

197.    As a direct and proximate result of Defendant's Unjust Enrichment, Plaintiffs and Nationwide Class members are entitled to restitution and disgorgement of all benefits, profits, and value that Defendant has obtained through the unauthorized collection and use of their protected information.

198.    Plaintiffs and Nationwide Class members seek judgment requiring Defendant to disgorge all profits, benefits, and value obtained through its unlawful conduct, together with interest thereon, and such other relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION

### INVASION OF PRIVACY
### (*On Behalf of Plaintiffs & the California Class*)

199.    Plaintiffs and the California Class members incorporate the foregoing allegations as if fully set forth herein.

200.    The right to privacy in California's constitution creates a right of action against private entities such as Defendant.

201.    Plaintiffs' and Class members' expectation of privacy is deeply enshrined in California's Constitution.

-36-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

202. Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among those are enjoying and defending life and liberty, acquiring, possessing, and protecting property and obtaining safety, happiness, and privacy."

203. The phrase "and privacy" was added in 1972 after voters approved a proposed legislative constitutional amendment designated as Proposition 11.

204. Critically, the argument in favor of Proposition 11 reveals the legislative intent was to curb business' control over unauthorized collection and use of consumers' personal information:

> The right of privacy is the right to be left alone ... It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us. Fundamental to our privacy is the ability to control circulation of personal information. This is essential to social relationships and personal freedom.

205. The principal purpose of this constitutional right was to protect against unnecessary information gathering, use, and dissemination by public and private entities, including Defendant.

206. Plaintiffs and the California Subclass members have a legally protected interest in preventing the unauthorized collection, aggregation, and dissemination of their personal information, particularly when this data reflects sensitive aspects of their personal lives.

207. Plaintiffs and the California Subclass also have a strong interest in preventing the widespread distribution of detailed behavioral profiles to unknown third parties—including foreign entities—without their knowledge or consent.

208. Plaintiffs and the California Subclass maintain a reasonable expectation of privacy in their day-to-day lives, including in their Internet browsing activity, online communications, and the personal data that Defendant surreptitiously collects,

-37-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

enriches, and shared with countries of concern without the knowledge or consent of Plaintiffs and the California Subclass members.

209. Defendant invades these interests, in violation of Plaintiffs' and the California Subclass members' reasonable expectation of privacy through its covert collection, aggregation, correlation, and dissemination of sensitive information and persistent identifiers tied to Plaintiffs and the California Subclass members as alleged herein.

210. Defendant intentionally and extensively violates the reasonable expectation of privacy held by Plaintiffs and the California Subclass members through engaging in this covert, large-scale data collection, designed to uniquely identify and surveil individuals.

211. This extensive covert surveillance and targeting would be highly offensive to a reasonable person and constitutes an egregious breach of social norms.

212. Defendant stockpiles a vast range of personal information, including persistent identifiers (e.g., cookie IDs, device IDs, mobile advertising IDs, and IP addresses), device metadata (e.g., screen resolution, browser version, operating system, and language settings), and contextual information such as full URLs and referring pages. This contextual data often reveals the exact content being viewed by the individual.

213. This widespread surveillance and distribution of personal data occurs without meaningful disclosure or the requisite consent and defies users' reasonable expectations of privacy. No reasonable user would expect that AliExpress would collect and distribute sensitive information to countries of concern.

214. Secretly collecting such data in sensitive contexts is highly offensive. Correlating that information into detailed user profiles is highly offensive. Sharing those profiles with a foreign adversary is highly offensive.

215. As described above, the U.S. government has identified China and its control of personal data as adversarial to national security and the safety of U.S.

-38-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

citizens.

216. Americans have a strong interest in protecting their personal data from an entity the U.S. government has identified as a threat to national security and the safety of U.S. citizens.

217. Despite the dangers of sharing this sensitive data with a company subject to Chinese control, AliExpress knowingly shares sensitive information with Alibaba Group.

218. These actions represent egregious breaches of social norms and violate both the reasonable expectation of privacy held by Plaintiffs and the California Subclass members, and the constitutional right to privacy guaranteed under California law.

219. In short, committing criminal and tortious acts against millions of Americans constitutes an egregious breach of social norms that is highly offensive.

220. As a result of these extensive and intentional invasions of privacy, Plaintiffs and the California Subclass members have suffered harm and are entitled to compensation and injunctive relief.

**SIXTH CAUSE OF ACTION**

**INTRUSION UPON SECLUSION UNDER CALIFORNIA COMMON LAW**
**(*On behalf of Plaintiffs & the California Subclass*)**

221. Plaintiffs and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

222. Plaintiffs and the California Subclass members have a strong interest in preventing the unauthorized collection, aggregation, and dissemination of their personal information.

223. These individuals maintain a reasonable expectation of privacy in their day-to-day lives—an expectation that extends not only to their Internet browsing activity and online communications, but also to the personal data that AliExpress surreptitiously collects, enriches, de-anonymizes, and shares with covered persons

-39-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

without the knowledge or consent of Plaintiffs and the California Subclass members.

224. AliExpress has violated Plaintiffs' and the California Subclass members' reasonable expectation of privacy through its collection, aggregation, correlation, and dissemination of Plaintiffs' and the California Subclass members' personal information.

225. AliExpress's practices are highly offensive to a reasonable person and constitute an egregious breach of social norms.

226. AliExpress intentionally and extensively violates the reasonable expectation of privacy held by Plaintiffs and the California Subclass members through engaging in covert, large-scale data collection designed to uniquely identify and surveil U.S. individuals.

227. AliExpress uses tools that secretly harvest and correlate personal information, enriches that data with additional details, and builds highly detailed identity profiles unique to each individual.

228. These profiles are then shared with Alibaba Group and other covered persons.

229. Collecting detailed information about a person's device, behavior, or website usage is inherently intrusive.

230. Most people would be shocked to learn that simply opening the Website could trigger data harvesting and the silent creation of a detailed behavioral profile tied to their identity.

231. This covert surveillance, subsequent profiling, and onward sharing with foreign adversaries, would be highly offensive to a reasonable person and constitutes a profound violation of social norms.

232. AliExpress, through the Tracking Technologies, does not merely collect isolated data points from Plaintiffs and California Subclass members. It stockpiles a vast range of personal information, including persistent identifiers (e.g., cookie IDs, device IDs, mobile advertising IDs, and IP addresses), device metadata (e.g., screen

-40-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

resolution, browser version, operating system, and language settings), and contextual information such as full URLs and referring pages. This contextual data often reveals the exact content being viewed by the individual.

233. Through these practices, AliExpress aids the interception, tracks, collects, aggregates, uses, and redistributes the Internet activity and communications of Plaintiffs and Subclass members.

234. AliExpress's extensive use of identifying cookies further enable the linkage of user identifiers across sessions, allowing AliExpress to build a detailed, persistent profile on each individual.

235. Correlating this data into rich behavioral profiles, then attaching persistent identifiers that allow parties to link the behavior to real-world identities is also highly offensive to a reasonable person. Moreover, sharing those profiles with foreign adversaries, without the user's knowledge or meaningful consent, is highly offensive behavior.

236. As described above, the U.S. government has identified China and its control of personal data as adversarial to national security and the safety of U.S. citizens. Americans have a strong interest in protecting their personal data from an entity the U.S. government has identified as a threat to national security and the safety of U.S. citizens.

237. Despite the dangers of sharing this sensitive data with a company subject to Chinese control, AliExpress knowingly shares sensitive information—including browsing activity, behavioral insights, and personal identifiers—with countries of concern.

238. The extent of AliExpress's collection, enrichment, and redistribution of highly detailed identity profiles is staggering and highly offensive.

239. These actions represent egregious breaches of social norms and violate the reasonable expectation of privacy held by Plaintiffs and the California Subclass members.

-41-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

240. AliExpress lacks any legitimate business interest in covertly tracking, profiling, and aggregating the identities and private information of Plaintiffs and the California Subclass members.

241. As a result of these extensive and intentional invasions of privacy, Plaintiffs and the California Subclass members have suffered harm and are entitled to just compensation and injunctive relief.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE COMPREHENSIVE COMPUTER DATA AND ACCESS AND FRAUD ACT
### Cal. Penal Code § 502, *et seq.*
### (*On behalf of Plaintiffs & the California Subclass*)

242. Plaintiffs and the California Subclass members incorporate the foregoing allegations as if fully set forth herein.

243. California's Comprehensive Data and Access and Fraud Act ("CDAFA") provides: "For purposes of bringing a civil or a criminal action, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction." Cal. Pen. Code § 502.

244. Defendant violated Cal. Penal Code § 502(c)(2) by knowingly accessing and without permission taking, copying, analyzing, and using Plaintiffs' and the California Subclass members' data.

245. Defendant effectively charged Plaintiffs and the California Subclass members by taking, copying, analyzing, and using their valuable personal information without permission and exploiting that information for Defendant's own financial benefit.

246. Plaintiffs and the California Subclass members retain a stake in the profits Defendant earned from their personal information and other data because, under the circumstances, it is unjust for Defendant to retain those profits.

-42-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

247.   As a direct and proximate result of Defendant's unlawful conduct within the meaning of Cal. Penal Code § 502, Defendant has caused loss to Plaintiffs and the California Subclass members and has been unjustly enriched in an amount to be proven at trial.

248.   Plaintiff, on behalf of himself and the California Subclass members, seek compensatory damages and/or disgorgement in an amount to be proven at trial, and declaratory, injunctive, or other equitable relief.

249.   Plaintiffs and the California Subclass members are entitled to punitive damages because Defendant's violations were willful and, upon information and belief, Defendant is guilty of oppression, fraud, or malice.

250.   Plaintiffs and the California Subclass members are also entitled to recover their reasonable attorneys' fees pursuant to Cal. Penal Code § 502(e).

## EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### *(On behalf of Plaintiffs & the California Purchaser Subclass)*

251.   Plaintiffs and the California Purchaser Subclass members incorporate the foregoing allegations as if fully set forth herein.

252.   California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

253.   Defendant's "unlawful" acts and practices include its violation of the Wiretap Act, 18 U.S.C. § 2510, *et seq.*; the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 632; the California Computer Data Access and Fraud Act, Cal. Penal Code § 502, *et seq.*; the BSDR; Intrusion upon Seclusion, and Invasion of Privacy.

254.   Defendant's conduct violated the spirit and letter of those laws, which protect property, economic and privacy interest and prohibits unauthorized disclosure of private communications and personal information.

-43-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

255. Defendant's "unfair" acts and practices include its violation of property, economic and privacy interests protected by the statutes identified above.

256. To establish liability under the unfair prong, Plaintiffs and California Purchaser Subclass members need not establish that these statutes were actually violated, although the claims pleaded herein do so.

257. Plaintiffs and California Purchaser Subclass members have suffered injury-in-fact, including the loss of money and/or property as a result of Defendant's unfair and/or unlawful practices because they would not have used the Website or made purchases thereon, if they had known that their privacy would not be respected.

258. Defendant's actions caused damage to and loss of Plaintiffs and the California Purchaser Subclass members because they would not have purchased from the Website if they had known that Defendant would not respect their privacy rights.

259. Defendant reaped unjust profits and revenue in violation of the UCL. This includes Defendant's profits and revenues from Plaintiffs and California Purchaser Subclass members' personal information and communications. Plaintiffs and the California Purchaser Subclass members seek restitution and disgorgement of these unjust profits and revenues.

## NINTH CAUSE OF ACTION

**VIOLATION OF CONSUMER LEGAL REMEDIES ACT,
Cal. Civ. Code § 1750,** *et seq.*
*(On behalf of Plaintiffs & the California Purchaser Subclass)*

260. Plaintiffs and the California Purchaser Subclass members incorporate the foregoing allegations as if fully set forth herein.

261. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices…undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

262. Defendant is a "person" within the meaning of the CLRA. *See* Cal. Civ. Code § 1761(c).

-44-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

263. Plaintiffs and the California Purchaser Subclass members are "consumers" within the meaning of the CLRA because they purchased Defendant's goods and services for personal, family, or household purposes. *See* Cal. Civ. Code § 1761(d).

264. Defendant's sale of products and services to Plaintiffs and the California Purchaser Subclass members is an "agreement between a consumer and another person" and is therefore a "transaction" within the meaning of the CLRA. *See* Cal. Civ. Code §§ 1761(e).

265. In connection with the sale of its products and services to Plaintiffs and the California Purchaser Subclass members, Defendant engaged in unfair and deceptive acts and practices in violation of California Civil Code § 1770(a), including the following:

    a.    Representing that goods have characteristics, uses, or benefits which they do not have, in violation of § 1770(a)(5): Defendant falsely represented that it "recognize[s] the importance of privacy and confidentiality of personal information," without acknowledging that its Tracking Technologies surreptitiously intercept users' personal data to so that Defendant can transmit them to covered persons in violation of the BSDR.

    b.    Representing that goods are of a particular standard, quality, or grade when they are not (Cal. Civ. Code § 1770(a)(7)): Defendant represented that its products meet a standard of privacy of security, that they do not meet.

    c.    Advertising goods with intent not to sell them as advertised (Cal. Civ. Code §§ 1770(a)(9)): Defendant advertised its products and Website protecting the privacy and confidentiality of personal information, while intending at all times to deploy the Tracking Technologies on the Websites to intercept, collect, and transmit

-45-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

consumers' personal data to third parties and to entities affiliated with China, in violation of the BSDR and applicable privacy laws.

d.    Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve (Cal. Civ. Code § 1770(a)(14)): Defendant's representations to consumers, including its privacy policies, failed to disclose: (i) the specific Tracking Technologies deployed and the identity of each third-party recipient; (ii) that user data is transmitted to entities subject to the jurisdictional control of China; and (iii) that Defendant's and the Alibaba Group's Chinese affiliations subject consumers' data to compelled disclosure under PRC national intelligence laws.

e.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal Civ. Code § 1770(a)(16)): Whereas Defendant represented that its products and Website protect the privacy and confidentiality of personal information Defendant failed to disclose: (i) the specific Tracking Technologies deployed and the identity of each third-party recipient; (ii) that user data is transmitted to entities subject to the jurisdictional control of China; and (iii) that Defendant's and the Alibaba Group's Chinese affiliations subject consumers' data to compelled disclosure under PRC national intelligence laws.

266.    Defendant's misrepresentations and omissions were material because a reasonable consumer would consider them important in deciding whether to purchase Defendant's products or services. Had Plaintiffs and the California Purchaser Subclass members known the truth—that Defendant's operations are deeply entangled with the Chinese government and that their personal data would be surreptitiously collected and transmitted to entities subject to PRC intelligence-access obligations—they would not have purchased Defendant's products, or would

-46-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

have paid substantially less for them.

267. Plaintiffs and the California Purchaser Subclass members relied on Defendant's misrepresentations and omissions in deciding to purchase Defendant's products. Defendant's misrepresentations and omissions were made in marketing materials, the Website, and in Defendant's Privacy Policy and related policies, all of which were designed to, and did, induce consumers to purchase Defendant's products.

268. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiffs and the California Purchaser Subclass members have suffered injury-in-fact, including (i) the loss of money paid to purchase Defendant's products they would not otherwise have purchased, or would have purchased at a lower price, had they known the truth; (ii) the diminution in value of products that do not possess the privacy, and security characteristics that were represented; and (iii) the loss of valuable personal data that was surreptitiously collected and transmitted to third parties and to entities affiliated with a foreign adversary.

269. Plaintiffs, individually and on behalf of the California Purchaser Subclass members, have complied with California Civil Code § 1782 by providing Defendant with notice and a demand for corrective action.

270. Pursuant to California Civil Code §§ 1780 and 1782, Plaintiffs, on behalf of themselves and the California Purchaser Subclass members, seek: an order enjoining Defendant from continuing to engage in the unfair and deceptive acts and practices alleged herein, including an order requiring Defendant to: (i) cease misrepresenting its Chinese affiliations and the privacy and security deficiencies of its Website; (ii) cease the surreptitious interception, collection, and transmission of consumers' personal data to entities affiliated with countries of concern under the BSDR; and (iii) implement truthful and adequate disclosures identifying the third-party recipients of user data, the scope of data collected, and the fact that user data flows to entities subject to PRC intelligence-access obligations.

-47-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendant AliExpress and in favor of Plaintiffs and the Classes, and grant the following relief:

a. For an order certifying the Classes and naming Plaintiffs as the representative of the putative Classes and Plaintiffs' attorneys as Class Counsel to represent the putative class members;

b. For an order declaring that the Defendant's conduct violates the statutes and laws referenced herein;

c. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d. For statutory damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For injunctive relief, restitution, and disgorgement, as pleaded or as the Court may deem proper; and

g. For an order awarding Plaintiffs and the putative Classes their reasonable attorneys' fees and expenses and cost of suit.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury for all issues so triable.

Dated: February 25, 2026

Respectfully submitted,

*/s/ Victor J. Sandoval*
Victor J. Sandoval (SBN 344461)
**ALMEIDA LAW GROUP LLC**
111 W. Ocean Blvd Ste. 426
Long Beach, California 90802
(562) 534-5907
victor@almeidalawgroup.com

David S. Almeida*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 437-6476
david@almeidalawgroup.com

*Counsel for Plaintiffs & the Proposed Classes*

-48-

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

*Pro Hac Vice forthcoming*

-49-

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**